IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ABINION MOTORS OF CRYSTAL LAKE LLC d/b/a FOX VALLEY VOLKSWAGEN CRYSTAL LAKE, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC.,<br><br>    Defendant. | No. 24 C 09944<br><br>Judge John J. Tharp, Jr. |

## ORDER

For the reasons set forth in the Statement below, the plaintiffs' motion to remand [17] is granted. The defendant's motion to dismiss [21] is denied as moot. Civil case terminated.

## STATEMENT

On September 13, 2024, a group of 33 Illinois Volkswagen and Audi dealers (the "Plaintiffs" or "Dealers") filed a Notice of Protest with the Illinois Motor Vehicle Review Board (the "Board"), alleging that Volkswagen Group of America, Inc. ("Defendant" or "Volkswagen") had violated various sections of the Illinois Motor Vehicle Franchise Act (the "IMVFA"). Pls.' Mot. to Remand (hereinafter, "Pls.' Mot.") ¶ 1, ECF No. 17. On October 11, 2024, Volkswagen filed a Notice of Removal in this Court, invoking federal question jurisdiction pursuant to 28 U.S.C. § 1331 and diversity jurisdiction pursuant to § 1332. Def.'s Notice of Removal ¶¶ 17-21, ECF No. 1. On November 8, 2024, the plaintiffs filed a motion to remand.

    I.    **Background**

Some history is necessary to understand the nature of the underlying dispute between the parties. Effective January 1, 2022, the Illinois legislature amended Section 6 of the IMVFA, the section which pertains to automotive warranty agreements and warranty repairs performed by franchise auto dealers on behalf of manufacturers. Ex. A to Notice of Removal 11-12, ECF No. 1-1. Section 6 has long required manufacturers to reimburse dealers for the time the dealers' technicians spend on warranty repairs at the same labor rate and retail part prices that a dealer would receive from any other customer seeking a repair (*i.e.*, paying customers not covered by a manufacturer's warranty). *Id*. at 11. The 2022 amendment added to Section 6 a "Multiplier Provision," which essentially required dealers (like plaintiffs) and manufacturers (like defendant) to either (1) agree to a labor time guide which would dictate the amount the manufacturer would reimburse the dealer for various warranty repairs, or (2) if no agreement could be reached, use the

manufacturer's own time guide for repair times but multiply it by 1.5. *See id.* at 12; 815 ILS 710/6(b). The amendment also added a "Recoupment Bar," which prohibited manufacturers from "impos[ing] any form of cost recovery fees or surcharges against a franchised auto dealership for payments made in accord with this Section." *Id*.

After enactment of the amendment, Volkswagen sued the Illinois Secretary of State, the Illinois Attorney General, and members of the Illinois Motor Vehicle Review Board in federal court. Volkswagen alleged that the Multiplier Provision and Recoupment Bar violated the Commerce Clause as well as Volkswagen's property, due process, equal protection, and First Amendment rights. The defendants in that case moved to dismiss, and this Court granted the motion. *See Volkswagen Grp. of Am., Inc. v. Giannoulias et al.*, 732 F. Supp. 3d 914, 920 (N.D. Ill. 2024). The Court first found that the new provisions did not violate Volkswagen's due process or equal protection rights. *Id*. at 928-30. The Court then adopted the defendants' proposed interpretation of the Recoupment Bar, essentially reading it to bar manufacturers from imposing higher prices on Illinois dealers with whom they had *not* agreed to a time guide—that is, it barred manufacturers from treating Illinois dealers who had not agreed to a time guide differently from those dealers who had. *Id*. at 933. The Court held that "the Recoupment Bar does not prohibit Volkswagen or other manufacturers from raising prices in Illinois to recover the cost of their vehicles or identifying or classifying any price increases as recoveries for costs associated with complying with the Multiplier Act" and that "[w]ithout deciding that the other interpretations are necessarily unconstitutional, the parties seem to agree that the defendants' interpretation does not raise any constitutional issues."[1] *Id*. at 936.

On July 17, 2024, Volkswagen[2] sent a letter to all dealers in Illinois informing them that the Court had ruled that "manufacturers are able to recover their warranty costs under [the Multiplier Provision]" and that therefore, beginning September 1, 2024, for each quarter, Volkswagen would: (1) calculate the total added cost of the Multiplier across all dealers in Illinois, (2) distribute the cost evenly across all new vehicles wholesaled to all Illinois dealers during that quarter, (3) inform the dealers of the total recoupment to be sought based on the number of new vehicles wholesaled to that dealer during the quarter, and then (4) issue a surcharge to each dealer's open parts account for the recoupment. Ex. A. to Notice of Removal 18-19. The Dealers—who were not party to the *Giannoulias* case—then filed their Protest before the Board, alleging the charge proposed by Volkswagen violated the Recoupment Bar because it was neither a wholesale

---

[1] Volkswagen had argued that if the Recoupment Bar prohibited them from raising prices to recover the costs associated with complying with the Multiplier Provision *at all*—that is, if Volkswagen simply had to eat those costs—the Bar would violate the Takings Clause, the Commerce Clause, and the First Amendment (because Volkswagen would not be allowed to publicly characterize any price increase as due to the extra costs of the Multiplier Provision). *Giannoulias*, 732 F. Supp. 3d at 930. The defendants countered that "the provision allows increases in wholesale prices and/or the issuance of surcharges in Illinois, as long as they are applied across the board and not just on certain dealers receiving 1.5x multipliers on Volkswagen's time guides." *Id*. at 932.

[2] Audi of America, Inc. is a business unit of Volkswagen, and issued its own letter to Audi dealers, apparently identical to the letter issued by Volkswagen to Volkswagen dealers. Ex. A to Notice of Removal 18-22, ECF No. 1-1.

price increase nor a surcharge, but a "unilateral charge against a dealer's account well after the vehicle has been purchased." *Id*. at 14.

## II.    Analysis

In their motion to remand, the Dealers argue that the Court has no jurisdiction over this case because their Notice of Protest before the Board does not raise any federal issues sufficient to invoke federal question jurisdiction. Pls.' Mot. ¶ 4. Further, they argue that even if diversity jurisdiction exists, the Board is not a "State court" within the meaning the removal statute, § 1441(a), and that the state's interest in adjudicating a dispute regarding the scope of the IMVFA outweighs the federal interest in removing under diversity jurisdiction. *Id*. ¶¶ 5-6. The Court addresses each argument in turn.

### A.   *Federal Question Jurisdiction*

In its notice of removal, Volkswagen asserts that the Dealers' Protest ignores the Court's *Giannoulias* order and proposes an interpretation of the Recoupment Bar that violates the Commerce Clause, "thereby implicating significant federal issues." Def.'s Notice of Removal ¶18. While Volkswagen does not contest the Dealers' primary argument against federal question jurisdiction—that " a case may *not* be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue," *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987)—Volkswagen asserts that federal question jurisdiction is appropriate here under the "embedded federal question doctrine."

The "embedded federal question doctrine" allows federal courts to hear cases asserting only state-law claims where the claim "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). "Where all four of these requirements are met . . . jurisdiction is proper because there is a serious federal interest in claiming the advantages thought to be inherent in a federal forum, which can be vindicated without disrupting Congress's intended division of labor between state and federal courts." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quotation marks omitted). However, this is an exceedingly narrow category of cases, and the mere existence of a federal issue in a case rarely allows for removal. *Id.* at 264 (patent issue in context of state legal malpractice claim not sufficient to trigger federal subject matter jurisdiction).

The Court agrees with the Plaintiffs that their complaint before the Board does not "necessarily" raise a federal issue. Case law illustrates just how substantial a federal question must be to qualify as "embedded" in the plaintiff's claim. In *Grable*, for example, the Internal Revenue Service seized the petitioner's property to satisfy a tax delinquency. 545 U.S. at 310. The petitioner brought a quiet title action in state court arguing that the IRS's subsequent sale of the property was invalid because the IRS had never given the petitioner notice of the seizure in the manner required by federal law. *Id*. at 311. The Supreme Court held that whether or not the petitioner was given notice within the meaning of the federal statute was an "essential element" of his claim, and allowed removal given the government's "strong interest in the prompt and certain collection of delinquent taxes." *Id*. at 315 (quotation marks omitted). Similarly, in *Evergreen Square of Cudahy*

*v. Wisconsin Housing and Economic Development Authority*, the Seventh Circuit held that while the plaintiff's breach of contract claim arose under state law, the breach depended on whether or not the defendant housing authority had violated Section 8 housing laws and related regulations. 776 F.3d 463, 467 (7th Cir. 2015). Removal was allowed. *Id.* at 468.

This, by contrast, is not a case where interpretation of federal law is an "essential element" of the Plaintiffs' claim. The Plaintiffs allege that Volkswagen's actions violate a state statute. Volkswagen may defend itself on the grounds that the statute is unconstitutional, but that is separate from the question of whether or not they have violated the statute, which, on its own, does not in any way turn on an interpretation of federal law.

Volkswagen also argues that the Dealers' complaint "necessarily raise[s] federal principles of judicial estoppel, issue preclusion, and even constitutional due process by seeking relief *from the Board* that would require it to reverse its previous position[.]" Def.'s Opp. 7 (emphasis in original). Even putting aside the fact that preclusion doctrines are not necessarily "federal" in nature, this is a confusing argument. If Volkswagen intends to argue that the Dealers are precluded or estopped from bringing their complaint, or that the Board is precluded or estopped from entering a ruling contrary to the position it asserted in *Giannoulias*, the argument is both underdeveloped and misplaced. Judicial estoppel prevents "a party who prevails on one ground in a prior proceeding [from] turn[ing] around and deny[ing] that ground in a later proceeding." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 495 (7th Cir. 2011). Similarly, "the party against whom issue preclusion is being invoked [must have been] fully represented in the prior action." *In re Fliss*, 609 B.R. 775, 784 (N.D. Ill. 2019). But the Board is not a party to this proceeding, and the Dealers were not a party to the *Giannoulias* litigation. Volkswagen, in a footnote, attempts to skirt this issue by arguing that if the Board, as adjudicator, were to contradict its prior positions in *Giannoulias*, Volkswagen could seek relief against the Board as a named party. That may be so (the Court expresses no opinion), but it does not follow from that prospect that the Board cannot rule on the Dealers' complaint, or that the Dealers cannot bring it.

There is therefore no federal question jurisdiction in this case.

B. *Propriety of Removal*

While Volkswagen has not established federal question jurisdiction, the parties do not dispute that diversity jurisdiction under 28 U.S.C. § 1332 exists in this case; the parties are completely diverse, and well over $75,000 is at issue. The Dealers argue, however, that the Board is not a "State court" within the meaning of the removal statute, 28 U.S.C. § 1441(a), and that even if it were, "the state's interest in providing a convenient and expeditious tribunal to adjudicate the rights and interests of the parties . . . outweigh[s] the defendant's right to remove the action to federal court." *Floeter v. C.W. Transport, Inc.*, 597 F.2d 1100, 1102 (7th Cir. 1979) (quotation marks omitted). Removal, the Dealers argue, is therefore improper.

Section 1441(a) authorizes removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." In *Floeter*, the Seventh Circuit instructed that for removal purposes, "the title given a state tribunal is not determinative; it is necessary to evaluate the functions, powers, and procedures of the state tribunal and consider those factors along with the respective state and federal interests in the subject matter and in the provision

of a forum." *Floeter*, 597 F.2d at 1102. *Floeter* imposed this two-part, functional inquiry—the agency's court-like nature and the strength of the federal interests as opposed to the state's interests—to determine whether a proceeding before a state agency may be removed. *See Wirtz Corp. v. United Distillers & Vintners of N. Am., Inc.*, 224 F.3d 708, 710 (7th Cir. 2000).

As the Dealers point out, this Court has already analyzed the question of whether or not the Board constitutes a "State court" under the removal state. *See Lou Bachdrodt Chevrolet Co. v. General Motors LLC*, No. 12-cv-07998, 2013 WL 3754833, *4-6 (N.D. Ill. Jul. 15, 2013). The plaintiffs in that case made many of the same arguments that the Dealers have made here as to the Board's non-judicial nature—*e.g.*, no ability to award damages, enter injunctions, hold jury trials, compel the production of documents or witnesses, etc. *Id*. at *4. But the Court in *Bachrodt* also took note of the defendant's "listing" of the Board's "many procedures [which] are similar to those of a judicial court," such as "hearings [which] may include the presentation of sworn testimony and other evidence before hearing officers who are attorneys empowered to make findings of fact and rulings of law, the conduct of discovery and issuance of subpoenas, motion practice, settlement processes, the creation of a record and rights of appeal, and the assessment of sanctions and the award of fees and costs." *Id*. In the end, the Court held that while the defendant had "the better of the argument with respect to the [Board's] 'courtness' in the context of [the plaintiffs'] petitions," "the issue [was] not without some doubt," and "[d]oubt . . . must be resolved against removal." *Id*. at *6. This Court nevertheless found it unnecessary to resolve the question of whether the Board constitutes a "State court" because the strength of the federal interests involved in the suit—providing a forum to diverse litigants—was clearly outweighed by "the state's considerable interest in regulating the relationships between automobile manufacturers and Illinois dealers." *Id*.

Volkswagen argues that substantial federal interests exist in this case because (1) the Dealers' interpretation of the IMVFA would, they argue, violate the federal constitution, (2) federal courts have an interest in safeguarding their orders and judgments, and (3) federal courts have an interest in avoiding "wasteful and duplicative" proceedings. *Jaramillo v. DineEquity, Inc.*, 664 F. Supp. 2d 908, 916 (N.D. Ill. 2009). None of these arguments are persuasive.

As to the first, Volkswagen has not pointed to a single case in which a court considered a constitutional defense made by a defendant such a significant federal interest that it denied a motion to remand. Further, "[f]ederal policy favors avoiding unnecessary constitutional decisions." *Matter of Registration of Edudata Corp.*, 599 F. Supp. 1089, 1091 (remanding case to Minnesota Commissioner of Commerce where defendant raised constitutional challenge to state statutes at issue given ongoing administrative proceeding). The Court sees no reason at this stage to decide constitutional issues before the Board has had an opportunity to weigh in on the Dealers' complaint. For the same reason, Volkswagen's second and third purported federal interests, the Court's interest in "safeguarding" its prior orders and in avoiding wasteful, duplicative proceedings, are premature given that the Board has not actually contradicted the Court's order in the *Giannoulias* case.

The federal interests here are particularly weak compared to the relatively strong interest of the state in interpreting its own statute via a specialized tribunal created by the state legislature. *See, e.g.*, *Wirtz*, 224 F.3d at 710 ("[D]iversity jurisdiction process is outweighed by the state's interest in administering its own alcoholic beverages program."); *Bachdrodt*, 2013 WL 3754833

at *6 ("Establishing the [Board] and vesting it with the authority to conduct prompt hearings to resolve disputes like the one in this case . . . outweighs the federal interest in providing a forum for diverse litigants."); *Darling's v. Chrysler Group, LLC*, 57 F. Supp. 3d 68, 80 (D. Me. 2014) ("The issue in dispute is how a Maine statute applies to a Maine corporation servicing Maine customers. The State has a strong interest in the application of its own laws to events that occur within its borders."). Volkswagen points to *Doucas Volkswagen, Inc. v. Volkswagen of America, Inc.*, 94-cv-00693 (W.D. Wis. Nov. 21, 1994), but the Court agrees with the Dealers that the case is neither precedential nor persuasive. In *Doucas*, not only did the plaintiff-dealer not oppose removal, but the court determined that the case merely "concern[ed] a private dispute over an allegedly wrongful cancellation of an automobile franchise agreement" and there was "no unique interest of the State of Wisconsin in providing an administrative tribunal to adjudicate the rights of the parties that outweighs Volkswagen's right to remove this case." *Doucas*, 94-cv-00693 at 6, 8. The issue here, the interpretation of certain provisions of the IMVFA, speaks directly to the state's asserted interest in regulating the relationship between auto dealers and manufacturers. *See Bachdrodt*, 2013 WL 3754833 at *6 (discussing "the state's considerable interest in regulating the relationships between automobile manufacturers and Illinois dealers.").

       This case is therefore not a removable state court action under § 1441(a). The plaintiffs' motion to remand [17] is granted.

Date: July 16, 2025

John J. Tharp, Jr.
United States District Judge